UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUISE R. SMITH, | ) |
| | ) No. 13 C 9108 |
| Plaintiff, | ) |
| | ) Magistrate Judge M. David Weisman |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Louise Smith filed this action seeking reversal of the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 405(g) *et seq*. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 638(c). (Dkt. 9.). For the reasons set forth below, the Court grants Plaintiff's motion and remands the case for proceedings consistent with this opinion.

### The Sequential Evaluation Process for Determining Disability

A claimant must show a disability under the Act in order to obtain disability insurance benefits. *York v. Massanari*, 155 F. Supp. 2d 973, 978 (N.D. Ill. 2001). To do so, a claimant must establish the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations provide a five-step, sequential inquiry to determine whether a claimant suffers from a disability: (1) whether the

claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether she has a severe impairment or combination of impairments; (3) if so, whether her impairment meets or equals any impairment enumerated in the regulations; (4) if not, whether she has the residual functional capacity to perform her past relevant work; and (5) if not, whether she can perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## Procedural History

Plaintiff filed for disability insurance benefits on May 4, 2011, alleging that she suffered from bipolar disorder. (R. 148, 186.) Her application was initially denied on July 15, 2011, and again after reconsideration on September 22, 2011. (*Id.* at 90, 96.) Subsequently, Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on May 29, 2012. (*See* R. 16-29.) Plaintiff, represented by counsel, testified at the hearing, and the ALJ also heard testimony from Richard J. Hamersma, a vocational expert ("VE"). (*Id.* at 19, 38-83.)

On July 14, 2012, the ALJ denied Plaintiff's application, finding that Plaintiff was not disabled for purposes of the Social Security Act. (*Id.* at 16, 29.) Applying the five-step analysis, the ALJ first determined that Plaintiff did not engage in substantial gainful activity from the alleged onset date through the date she was last insured. (*Id.* at 21.) At step two, the ALJ found Plaintiff's psychiatric symptoms indeed constituted a severe impairment. (*Id.* at 22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 24.)

The ALJ next evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined Plaintiff can perform a full range of work at all exertional levels with the nonexertional limitations of understanding, remembering, and carrying out detailed and complex job tasks. (*Id.* at 25.) The ALJ further concluded Plaintiff is not suited for work that requires extended intense focus and concentration, can only have casual interaction with the general public, and would be expected to be off task 5% of an eight-hour workday. (*Id.*) On consideration of Plaintiff's RFC and the VE's testimony, the ALJ found at step four that Plaintiff cannot perform any past relevant work. (*Id.* at 27.) At the final step, the ALJ concluded that, based on age, education, work experience, and RFC, the national economy contained jobs in significant numbers that Plaintiff can perform. (*Id.* at 28.) Accordingly, the ALJ held that Plaintiff lacked a cognizable disability as delineated by the Act. (*Id.* at 28-29.)

The Appeals Council declined Plaintiff's request for review of the ALJ's decision. (*Id.* at 1-6, 15). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual

---

[1] Prior to analyzing step four of the prescribed framework, the ALJ assesses the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4). The RFC "is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1); *See Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) ("The RFC is the maximum that a claimant can still do despite his mental and physical limitations.").

3

findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (citation omitted).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## **Relevant Medical Evidence**

Plaintiff was hospitalized in October 2007 where she was diagnosed with delusional disorder. (R. 260-61, 22.) During her eight-day hospitalization, Plaintiff exhibited or admitted to myriad symptoms, including the belief she would marry her physician and run away with her

4

minister, poor hygiene, disheveled appearance, hallucinations, and delusions.  (*Id.* at 261-262.)
The hospital notes reflect that Plaintiff raised her voice, verbally threatened staff, refused
direction, and had to be physically escorted to her room.  (*Id.* at 262, 320.)  The hospital admitted
Plaintiff to the intensive treatment unit where she partook in individual therapy, group therapy,
expressive therapy, milieu therapy, and discharge planning.  (*Id.* at 262.)  Despite denying
suicidal and homicidal thoughts, the hospital also placed Plaintiff on escape, assault, and self-
injury precautions.  (*Id.* at 261-262.)  Plaintiff also received Risperdal,[2] a drug used to treat
Bipolar Disorder.  (*Id.* at 261); *see* http://www.risperdalconsta.com/ (last visited September 15,
2016).

Shortly thereafter, Plaintiff began treatment with Dr. Moises Gaviria and, at Dr. Gaviria's
recommendation, counseling with a licensed social worker, Kris Maynard.  (R. 403-404.)  On
initial evaluation, Dr. Gaviria noted a negative psychiatric history, but diagnosed Plaintiff with
Major Depressive Disorder after finding Plaintiff displayed symptoms of depressed mood and
anxiety.  (*Id.* at 403.)  The subsequent record demonstrates Plaintiff's turbulent experience with
her mental illness.

On January 3, 2008, Dr. Gaviria documented Plaintiff's acute psychotic episode, but
noted that she had since recovered to a normal mood with no signs of depression or mood
elevation.  (*Id.* at 405.)  Plaintiff then remained relatively stable with therapy and medication,
(*see id.* at 405-412), before relapsing with paranoid delusions and depression in July 2008.  (*Id.*
at 413.)  At the psychiatrist's recommendation, Plaintiff was again hospitalized.  (*Id.* at 413,
456.)  She did not sleep for five or six days, took her husband's credit cards to purchase items
from the home shopping network, experienced pressured speech, and inappropriately removed

---

[2] Risperdal is the trademark for risperidone.  http://dorlands.com  (last visited 9/19/16).  Risperidone is
a benzisoxazole derivative used as an antipsychotic agent, administered orally. Its mechanism of action is unknown,
but its activity may result from a combination of dopamine and serotonin antagonism.  *Id.*

5

her clothing. (*Id.* at 414.)[3] Dr. Gaviria's notes also indicate Plaintiff had delusions about the Holy Spirit sending messages via television and radio and Plaintiff's denial of such delusions and related mania. (*Id.*) The hospital placed Plaintiff under precautions for bizarre behavior and suicidality. (*Id.* at 456.) She experienced delusional preoccupation with her husband, hallucinations, difficulties with thought processing, thought insertion,[4] and paranoid delusions. (*See id.*) Plaintiff received risperidone, clonazepam,[5] trazadone,[6] Cogentin,[7] and Zoloft.[8] Ultimately, Plaintiff was diagnosed with Schizoaffective Disorder.[9] (*Id.* 456-57.)

In memorializing this manic episode, Dr. Gaviria's notes reflect a Bipolar I diagnosis.[10] (*Id.* at 414.) Dr. Gaviria and Ms. Maynard continued to treat Plaintiff, including medication management. (*Id.* at 416-38, 464-98.) In addition to, or in conjunction with, the medications set forth above, Dr. Gaviria at times prescribed Lamictal,[11] Lunesta,[12] Abilify,[13] Synthroid,[14]

---

[3] Plaintiff's daughter initially brought Plaintiff to the hospital after Plaintiff did not eat or sleep for three days. (R. 393.) Hospital personnel had to place Plaintiff in restraints after she "attempted to leave by pushing the Emergency Department physician out of the way." (*Id.*) Plaintiff was not admitted until three days later, after seeing Dr. Gaviria. (*Id.* at 413, 456.)

[4] Thought insertion is "the delusion that thoughts that are not one's own are being inserted into one's mind." http://dorlands.com (last visited 9/19/16).

[5] Clonazepam is used to treat panic disorders. https://www.drugs.com/clonazepam.html (last visited September 15, 2016).

[6] Trazodone is an antidepressant used to treat major depressive disorder. https://www.drugs.com/trazodone.html (last visited September 15, 2016).

[7] Cogentin is prescribed to involuntary movements due to the side effects of certain psychiatric drugs. http://www.webmd.com/drugs/2/drug-13533/cogentin-oral/details (last visited September 15, 2016).

[8] Zoloft is a selective serotonin reuptake inhibitor used to treat depression, panic, anxiety, or obsessive-compulsive symptoms. https://www.drugs.com/zoloft.html (last visited September 15, 2016).

[9] Schizoaffective Disorder is "a mental disorder in which a major depressive episode, manic episode, or mixed episode occurs with prominent psychotic symptoms characteristic of schizophrenia, the symptoms of the mood disorder being present for a substantial portion of the illness, but not for its entirety. . . ." http://dorlands.com (last visited 9/19/16).

[10] Despite generally referring to Plaintiff's disease as bipolar disorder, throughout the diagnosis sections of their progress notes, Dr. Gaviria and Ms. Maynard also refer to "Psychotic Disorder NOS. 298.9 (Active)" and, on occasion, do so exclusively in those sections. (*See id.* at 464-98.) Psychotic Disorder defers to the definition of psychosis, which, in turn, states that it may be applied to conditions such as bipolar disorder (and its predecessor nomenclature, manic-depressive psychosis). *See* http://dorlands.com (last visited 9/19/16); *see also Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008) (noting that "the older and more descriptive term [for bipolar disorder] is manic-depressive illness").

[11] Lamictal is used to treat mood episodes resulting from bipolar disorder. https://www.drugs.com/lamictal.html (last visited September 15, 2016).

Seroquel,[15] and melatonin.[16] (*See generally id.*) Plaintiff exhibited symptoms of anxiety, depression, or both interspersed with entirely normal days absent symptoms of depression or mood elevation throughout her treatment. (*See id.*)

In January 2011, Plaintiff suffered another major breakdown requiring hospitalization. (*See id.* at 439-59.) Plaintiff's family indicated she had not slept in four days and had not eaten in three days. (*Id.* at 443, 445.) The Emergency Department noted, *inter alia*, Plaintiff's four-year history of bipolar disorder,[17] sleep and appetite disturbances, poor impulse control, poor judgment, a lack of insight into Plaintiff's own behavior, and Plaintiff's irritable mood. (*Id.* at 445.) The notes also reflect Plaintiff's attempt to exit a moving vehicle in order see a doctor who treated her several years prior. (*Id.*) Plaintiff had a history of noncompliance with her medication regimen. (*Id.* at 448.) The hospital titrated Plaintiff's Risperdal, but due to lack of progress, started Plaintiff on Zyprexa.[18] (*Id.* at 458.) She was discharged after fourteen days. (*Id.*)

Dr. Gaviria and Ms. Maynard assessed Plaintiff with a mental impairment questionnaire on May 6, 2011. (*Id.* at 459-61, 531-33.) They concluded that, as a result of Plaintiff's bipolar disease, she suffered from sleep disturbance, emotional lability, mood disturbance, perceptual disturbances, and difficulty thinking or concentrating. (*Id.* at 459, 531) According to the assessment, Plaintiff lacked the ability to work. (*Id.* at 459, 531) Dr. Gaviria and Ms. Maynard

---

[12] Lunesta is a sedative used to treat insomnia. https://www.drugs.com/lunesta.html (last visited September 15, 2016).

[13] Abilify is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder. https://www.drugs.com/abilify.html (last visited September 15, 2016).

[14] Synthroid is used to treat low thyroid hormone levels. https://www.drugs.com/synthroid.html (last visited September 15, 2016).

[15] Seroquel is used to treat bipolar disorder, schizophrenia, and major depressive disorder. https://www.drugs.com/seroquel.html (last visited September 15, 2016).

[16] Melatonin is used to treat insomnia. https://www.drugs.com/melatonin.html (last visited September 15, 2016).

[17] On review of the record, it appears that, at one point, Plaintiff and her family denied both a history of bipolar disorder and Plaintiff taking medicine regularly for psychological issues. (R. 440, 443.)

[18] Zyprexa is another antipsychotic medication used to treat bipolar disorder and schizophrenia. https://www.drugs.com/abilify.html (last visited September 15, 2016).

noted Plaintiff's multiple hospitalizations, the side effects associated with her medications, and that stress triggers Plaintiff's psychotic or manic episodes. (*Id*. at 459, 531)  They anticipated Plaintiff would miss work more than three times per week – the highest designation available – and added a note stating "unable to work." (*Id.* at 460, 532.)  Moreover, Dr. Gaviria and Ms. Maynard did not rank any category of Plaintiff's mental abilities and aptitude in the highest category of "Unlimited/Very Good." (*Id.*)  They ranked as "Poor/None," the lowest category, Plaintiff's ability to remember work-like procedures; maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict, tolerances; complete a normal workday and work week without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (*Id.*)  They further remarked that Plaintiff's medications undermine her concentration and stress induces her psychotic and manic symptoms. (*Id.*)  They opined Plaintiff would constantly have deficiencies of concentration, persistence, or pace, resulting in a failure to complete tasks in a timely manner. (*Id.* at 461, 533.)  Finally, Dr. Gaviria and Ms. Maynard indicated Plaintiff would have continual episodes of deterioration or decompensation in work or work-like settings causing her to withdraw from the situation or experience exacerbation of symptoms. (*Id.*)

## **Discussion**

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ (1) impermissibly rejected the treating psychiatrist's opinion; (2) improperly analyzed Plaintiff's credibility; and (3) improperly evaluated Plaintiff's RFC. (Pl's. Mem. at 8-14.)  The Court addresses Plaintiff's arguments in turn.

**I.      Treating Physician's Opinion**

Plaintiff argues that the ALJ erroneously afforded "little weight" to Dr. Gaviria's opinion. (Pl's. Mem. at 8.) "[I]n determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003). In general, a treating physician is better positioned to evaluate a claimant's limitations than a non-treating source. *Nazifi v. Colvin*, No. 13 C 5728, 2015 WL 859600, at *3 (N.D. Ill. Feb. 26, 2015). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). If the treating physician's opinion "is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008) (citation omitted). "Thus, to the extent a treating physician's opinion is consistent with the relevant treatment notes and the claimant's testimony, it should form the basis for the ALJ's determination." *Bates v. Colvin,* 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted). An ALJ therefore must offer "good reasons" for discounting a treating physician's opinion. *Id.* at 1101; 20 C.F.R. § 404.1527(c)(2). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)).

Here, the ALJ's misunderstanding of bipolar disorder caused him to fail to provide a legally sufficient reason for discounting Dr. Gaviria's opinion. The ALJ specifically relied on what he believed to be inconsistencies within Dr. Gaviria's progress notes. He found:

> After each hospitalization, however, the claimant was able to return to relatively good functioning, according to her treating psychiatrist. For instance, on March 1, 2012, Dr.

9

> Gaviria reported the claimant had no serious mental status abnormalities. . . . This treatment note should be contrasted with the mental impairment questionnaire that he and the social worker completed on May 6, 2011, and that the social worker completed on May 16, 2012 . . . where they opined that the claimant was so impaired by her bipolar disorder that she could not function in the workplace. The social worker notes poor concentration, difficulty thinking or concentrating, and illogical thinking . . . . *It hardly seems possible that she is speaking about the same patient* that the psychiatrist described on March 1, 2012. The social worker is not an "acceptable medical source,"[19] but her opinion from 2012 is essentially the same as the one from the psychiatrist in 2011. *The psychiatrist's opinion is not consistent with his own progress notes, which point to a non-incapacitating mental condition.*

(R. 26-27) (emphasis added.) On this basis, the ALJ afforded "little weight" to Dr. Gaviria's opinion and determined his own RFC assessment was supported by the objective medical evidence. (*Id.* at 27.)

But, at its essence, bipolar disorder is marked by inconsistency. The Seventh Circuit has provided substantial commentary on the issue. "A person suffering from [bipolar] disorder has violent mood swings . . . For many patients, the prognosis of bipolar disorder is not good, as the disorder is associated with frequent relapses and recurrences." *Bauer,* 532 F.3d at 607 (internal quotations marks and citations omitted). The record here clearly demonstrates "relapses and recurrences." As in prior cases, "the ALJ's analysis reveals an all-too common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the

---

[19] The Court notes that the fact that Ms. Maynard is not "an acceptable medical source" is not a valid reason for giving her opinion little weight. While the opinion of a social worker "cannot establish the existence of a medically determinable impairment," information from a social worker "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06—03, at *2. SSR 06—03 further explains:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *3. Additionally, Ms. Maynard treated Plaintiff in conjunction with Dr. Gaviria. (*See* R. 416-38, 464-98.) Both Ms. Maynard and Dr. Gaviria consistently diagnosed Plaintiff with bipolar disorder. (*See id.*) Thus, while Ms. Maynard's opinion cannot be given controlling weight, it cannot be discounted because she is a licensed clinical social worker.

disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (internal citation omitted); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (finding medical witnesses did not contradict themselves because "bipolar disorder is episodic"). The ALJ concluded that Dr. Gaviria's treatment notes were inconsistent without providing any discussion of the nature of bipolar disorder. Accordingly, the Court finds that the ALJ failed to give the requisite "good reasons" for discounting Dr. Gaviria's opinion. *Gudgel*, 345 F.3d 467 at 470.

The record also contains considerable evidence substantiating Dr. Gaviria's opinion. For example, on May 6, 2011, Dr. Gaviria scored Plaintiff at a Global Assessment Functioning ("GAF") of 50. (R. 23, 459.) The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (hereinafter DSM-IV).[20] A GAF score of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM–IV at 34. Other non-exhaustive examples supporting Dr. Gaviria's assessment include Plaintiff's belief she would marry her physician and run away with her minister, (R. 261), Dr. Gaviria's notes regarding Plaintiff not sleeping for several days in a row and her delusions of the Holy Spirit sending her messages through the television, (*id.* at 414), and the documentation of symptoms of

---

[20] The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

11

anxiety, depression, or both interspersed with normal days. (*See generally id.* at 416-38, 464-98.)

Moreover, the ALJ did not properly address the regulatory factors when discounting Dr. Gaviria's opinion. "Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (citations omitted). The regulations provide that where controlling weight is not given to the treating source's opinion, the ALJ must consider the following factors: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id.*

Here, other than the cursory statement "I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," (R. 25), and the erroneous examination of consistency, (R. 27), the ALJ never attempted to tether his decision to these factors. In *Campbell*, the Seventh Circuit criticized the ALJ's decision where it did "not explicitly address the checklist of factors as applied to the medical opinion evidence." 627 F.3d 299 at 308. Like the *Campbell* case, here, "several of these factors support the conclusion that [the treating physician's] opinion should be given great weight." *Id.* Dr. Gaviria treated Plaintiff over the course of several years; he treated Plaintiff on a routine basis, even monthly at times; and he is a psychiatrist. (*See* R. 416-38, 464-98); *see Campbell*, 627 F.3d 299 at 308 ("Dr. Powell treated Campbell for fifteen months; she treated him on a monthly basis; she is a psychiatrist. . . . Proper consideration of these factors may have caused the ALJ to accord greater weight to Dr. Powell's opinion."). Should the ALJ not afford

controlling weight to the treating physician's opinion on remand, he shall articulate his reasoning in accordance with the aforementioned checklist of factors.

Finally, the ALJ provided no basis for his decision to give moderate weight to the opinion of the state agency mental-health specialist. (*See* R. 27.) Thus, he did not "identify the relevant evidence and build a 'logical bridge'" to his final determination. *Moon*, 763 F.3d 718 at 721. Because this does not enable the Court to engage in meaningful review, the Court finds additional support for remanding the case. *See Steele,* 290 F.3d 936 at 940.

In light of the ALJ's failure to address the episodic nature of bipolar disorder, inadequate discussion of the required checklist of factors after deciding not to afford Dr. Gaviria's opinion controlling weight, and lack of explanation regarding the weight given to the state agency mental-health specialist, the Court finds that remand is appropriate.

## II.  Credibility Determination

Plaintiff argues that the ALJ failed to point to sufficient information to justify his credibility determination. (Pl.'s Mem. at 11.)  As an initial matter, the Social Security Administration recently issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminate[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  Though SSR 16-3p was issued after the ALJ's decision in this case, it is appropriate to apply it here because it is a clarification of, not a change to, existing law, *see Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir, 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) (stating that courts give "great weight" to an agency's expressed intent to clarify a regulation), and is substantially the same as the prior regulation. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p,

2016 WL 1119029 (Mar. 16, 2016). Under either regulation, the ALJ "is in the best position to determine the credibility of witnesses." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Thus, the Court will "overturn a credibility determination only if it is patently wrong" *id.*, that is, it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c); Social Security Ruling (SSR) 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Further, SSR 16-3p requires the ALJ to consider the "entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p; s*ee also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (quoting SSR 96-7p containing substantially the same language); 20 C.F.R. § 404.1529(c).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942

(citation omitted); *see* SSR 16-3p; SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

Here, the ALJ did not provide an adequate explanation with specific reasons for his credibility finding. Instead, he simply provided a recap of Plaintiff's testimony and noted Plaintiff's husband's report about her limited capabilities before concluding:

> After careful consideration of the evidence, I find the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 26.) At no point did the ALJ identify which particular statements he found lacking credibility or which other evidence led to the credibility determination offered. (*See* R. 26-27.) "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. On remand, the ALJ shall therefore revisit his credibility analysis and provide a more thorough explanation for his credibility determination.

In signaling Plaintiff's statements were not credible to the extent they are inconsistent with the residual functional capacity assessment, (R. 26), the ALJ utilized the very language the Seventh Circuit has criticized as "meaningless." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The use of the "language fails to connect the conclusory statement with objective evidence in the record or explain what the ALJ relied on when making [his] determination." *Id*. (internal citation omitted). The inclusion of this language alone, however, "does not

15

automatically undermine or discredit the ALJ's ultimate conclusion if [he] otherwise points to information that justifies [his] credibility determination." *Id.* (internal citation omitted).

Defendant argues that the ALJ rested his credibility determination not solely on the boilerplate language, but also on "Smith's stated activities, the medical record, and Smith's statements." (Def's. Mem. at 9.) While these items are summarized in the ALJ's opinion, the ALJ never explained how or to what extent they impacted his credibility determination. (R. 26-27.) Moreover, these items substantially included household chores, shopping for food and personal items, paying bills, using a checkbook, reading, and watching television. (R. 26.) Though it is not clear the extent to which these activities impacted the ALJ's credibility determination, Plaintiff correctly points out that the Seventh Circuit has warned against affording too much weight to daily activities. (Pl's. Mem. at 12); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("But an ability to engage in 'activities of daily living' . . . need not translate into an ability to work full time."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (citing cases) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.").

Absent more, the ALJ's thinly supported use of boilerplate rationale cannot support his credibility determination.[21] *See Adams v. Astrue*, 880 F. Supp. 2d 895, 906 (N.D. Ill. 2012) (citing *Richison v. Astrue*, 462 Fed.Appx. 622, 625-26 (7th Cir. 2012) (by itself, this boilerplate is inadequate to support a credibility finding)). Therefore, on remand, the ALJ must identify the evidence that impacted his credibility determination instead of relying on the boilerplate language. *Id.* (use of this sort of boilerplate does not make a credibility determination invalid

---
[21]We note that even if this deficiency did not exist, we would still remand this case for the other reasons stated herein.

16

when it is not used mechanistically, and the ALJ explains how Plaintiff's claimed limitations are not supported by the record as a whole); SSR 16-3p ("The determination or decision must contain specific reasons for the weight given . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

### III. RFC Analysis

Plaintiff contends that the ALJ lacked a sufficient basis for his RFC analysis in which he concluded Plaintiff would be expected to be off task 5% of the time. (Pl.'s Mem. at 13.) The Court agrees. While the ALJ's opinion "need not contain a complete written evaluation of every piece of evidence," *id.* (citation omitted), the opinion contains nothing to enable this Court to conduct a meaningful review of the conclusion that Plaintiff "would be expected to be off task 5% of the time in an eight-hour workday." (R. 25.) Defendant correctly points out that the ALJ mentions concentration deficits, difficulty with stress, and limited ability to perform complex and detailed jobs. (Def's. Mem. at 9); (R. 25.) Merely raising these points, however, does nothing to establish such a precise percentage of time Plaintiff would spend off task. Accordingly, on remand, the ALJ shall provide an explanation of how he arrived at the conclusion that Plaintiff "would be expected to be off task 5% of the time in an eight hour workday." (R. 25.)

### IV. Time Period of Evidence in the Record

The Commissioner argues that certain evidence in the record should be discounted because it occurred either prior to Smith's alleged disability onset date or after the date on which she was last insured. (Def.'s Mem. at 4-5.) Plaintiff, by contrast, contends that the ALJ may consider all relevant evidence. (Pl.'s Reply at 4.)

The full range of medical evidence available is relevant to the analysis. The Commissioner cites *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) for the proposition

17

that "a claimant's deteriorating condition after the date last insured is largely irrelevant in determining whether disability is present on or before the date last insure." (Def.'s Mem. at 4.) The *Eichstadt* court found that the ALJ reasonably concluded that evidence postdating the claimant's date last insured did not support the claim in that case. 554 F.3d at 666. *Eichstadt* does not require that the ALJ ignore such evidence. Rather, the Seventh Circuit directs that in cases where the ALJ inquires whether the plaintiff was disabled before the last date of insurance, the ALJ must consider all relevant evidence, including evidence regarding the plaintiff's present condition. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) (citing cases). As discussed above, evidence subsequent to the last date insured appears particularly pertinent in cases involving bipolar disorder. Thus, the ALJ did not err in considering the full range of medical evidence.

## Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion [25] is denied. The case is remanded pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum opinion and order. Judgment is entered in favor of Plaintiff and against the Commissioner.

**SO ORDERED.**                              **ENTERED:  February 16, 2017**


_____
**M. David Weisman**
**United States Magistrate Judge**